EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| In re:  José A. García Ortiz | 2013 TSPR 5  187 DPR ____ |
|---|---|

Número del Caso: CP-2009-7

Fecha: 11 de diciembre de 2012

Materia: Conducta Profesional – Suspensión inmediata del ejercicio de la abogacía y la notaría por violación a los cánones 9 y 12 de Ética Profesional

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

In re: José A. García Ortiz

CP-2009-0007

PER CURIAM

En San Juan, Puerto Rico, a 11 de diciembre de 2012.

Hoy atendemos una querella presentada contra el Lcdo. José A. García Ortiz (el querellado), a quien se le imputó quebrantar los Cánones 12, 18, 19 y 20 del Código de Ética Profesional, 4 L.P.R.A. Ap. IX. Por entender que ciertas actuaciones durante el proceso disciplinario fueron contrarias a lo que prescriben los Cánones 9 y 12, supra lo suspendemos inmediatamente del ejercicio de la abogacía y la notaría por el término de seis meses.

I

El licenciado García Ortiz fue admitido al ejercicio de la abogacía el 1 de noviembre de 1978 y a la práctica de la notaría el 8 de diciembre del mismo año. En lo pertinente a la querella que nos ocupa, este asumió la representación legal de la Sra. Lucy A. López Martínez (la quejosa o señora López), parte demandada en el caso KAC-1996-1264 sobre división de bienes gananciales atendido por el Tribunal de Primera Instancia, Sala de San Juan (TPI).[1] Ese foro judicial dictó sentencia en octubre de 2005 liquidando el haber ganancial y adjudicándole a la demandada $4,644.25.

Así las cosas, el 23 de enero de 2007 la señora López presentó una queja contra el querellado y adujo que estuvo varios meses tratando de localizarlo, sin resultado alguno.[2] Relató que mientras eso sucedía su caso se encontraba en la etapa final y que el TPI dictó sentencia en su contra debido a su inacción. También expuso que intentó conseguir el expediente de su caso para contratar a otro abogado, pero sus gestiones resultaron infructuosas.

---

[1] Este pleito inició para el 1996 y el querellado asumió la representación de la señora López para el 1998.

[2] En su queja relató que lo llamó varias veces a su número telefónico y lo visitó a su oficina. Indicó que luego se percató de que el querellado tenía una localidad nueva, donde tampoco, según alegó, pudo contactarlo.

Subsiguientemente, le notificamos la queja al querellado en dos ocasiones.[3] No fue hasta julio de 2007 que este compareció y contestó las alegaciones de la quejosa.[4] Allí informó que no tenía reparo en entregar el expediente a la señora López y que le había delegado ese asunto a un tercero.

El 21 de agosto de 2007, referimos la queja a la Oficina del Procurador General. En cumplimiento con el referido, la Procuradora General Auxiliar le requirió al letrado que fuera más responsivo y sustentara su contestación con la entrega de los siguientes documentos: la sentencia del TPI; el escrito en que objetó esa sentencia; la moción en que solicitó renunciar a la representación legal de la quejosa y evidencia que acreditara la entrega del expediente. El querellado incumplió con dicho requerimiento, y luego de apercibirlo, en diciembre de 2007 le notificamos otra resolución ordenando que en 15 días hiciera entrega de los documentos. El querellado tampoco cumplió con esa orden en el término dispuesto. No fue hasta pasado siete meses, el 20 de octubre de 2008, que compareció mediante "Moción en Cumplimiento de Orden". En su comparecencia detalló

---

[3] El 26 de febrero y el 30 de abril de 2007. Dado a que no la contestó, el 21 de junio de ese año emitimos Resolución apercibiéndole que dicho proceder podría acarrear sanciones disciplinarias.

[4] En su moción se limitó a señalar que no tenía reparo en entregarle el expediente a la quejosa, que ésta le debía honorarios, que había solicitado la renuncia a esa representación legal y que había solicitado la reconsideración de la sentencia que se dictó en el TPI. En un posterior informe rendido por la Procuradora General Auxiliar, se detalla que esta comparecencia no había sido responsiva a las alegaciones de la quejosa.

que "[s]e hicieron gestiones adicionales en el tribunal con referencia a la sentencia emitida y la propia Sra. Lucy López Martínez el día 11 de enero de 2006 obtuvo copia certificada y me la hizo llegar a la oficina". Además, informó que le estaría remitiendo a la quejosa mediante correo certificado algunos documentos que quedaban de su expediente.

Ante este marco fáctico le instruimos a la Oficina del Procurador General que presentara la querella contra el licenciado García Ortíz. De esta forma, el 22 de mayo de 2009, se presentó la querella aduciendo que el letrado violó los Cánones 12, 18, 19 y 20 del Código de Ética Profesional, supra. En cuanto al Canon 12, supra, apuntó que el letrado demostró una falta de comparecencia durante el trámite del caso de la quejosa, provocando una dilación innecesaria en la solución del mismo. Referente al Canon 18, supra, sostuvo que este no desplegó la diligencia necesaria para proteger los intereses de la quejosa y que por tal razón se dictó una sentencia adversa. Respecto al Canon 19, supra, puntualizó que el abogado nunca le informó a la quejosa sobre la sentencia que dictó el TPI ni mantuvo comunicación con ella durante la etapa final del caso. De otra parte, adujo que el letrado quebrantó el Canon 20, supra, al no entregarle el expediente a la señora López, según le fue peticionado.

Aproximadamente un año después, el 25 de mayo de 2010, el licenciado García Ortiz contestó la querella

negando las imputaciones. En esa ocasión, afirmó que hizo entrega del expediente a la quejosa una vez finalizó el caso, pero que no le tomó recibo de entrega debido a la relación de confianza que existía entre ellos. Expresó, además, que la señora López siempre estuvo informada de todos los trámites procesales y que nunca cuestionó su desempeño profesional ni manifestó interés de apelar, a pesar de conocer de su derecho a ello. También, acompañó su contestación con una copia de un recibo de facsímil con fecha de 27 de noviembre de 2007 que según él evidenciaba que le había enviado a la Procuradora los documentos previamente solicitados.

Consecuentemente, el 9 de agosto de 2010 nombramos a la Lcda. Eliadís Orsini Zayas como Comisionada Especial (la Comisionada). Es pertinente esbozar ciertos incidentes procesales acaecidos previo a la vista en sus méritos. Veamos.

En la vista inicial, la Comisionada advirtió que ciertas imputaciones requerirían de prueba testifical para garantizar el debido proceso de ley al querellado. Como la Procuradora informó que la quejosa estaba fuera de Puerto Rico, la Comisionada le instruyó a que coordinara la fecha en que podría comparecer a prestar su testimonio. En octubre de 2011 la Procuradora señaló que el caso estaba listo para atenderlo y se pautó la vista en sus méritos para el 7 y 8 de febrero de 2012. Según surge del

Informe de la Comisionada[5], esas fechas fueron seleccionadas acorde a la disponibilidad de la testigo.

Empero, no fue hasta el 27 de enero de 2012 que la Procuradora informó que la señora López no podría comparecer, y sin especificar fecha alguna, solicitó la transferencia de la vista.[6] Atendida esa petición, la Comisionada la declaró no ha lugar. Dispuso que según el expediente del caso KAC-1996-1264 la quejosa demostraba un patrón de obstaculizar la pronta solución de las controversias. En consecuencia, declaró a la testigo no disponible conforme a la Regla 806 (4) de Evidencia.

En vista de lo anterior, sin la comparecencia de la querellante, se celebró la vista en sus méritos. Oportunamente, la Procuradora solicitó reconsideración a la orden referida. Conforme se desprende del Informe de la Comisionada, en dos ocasiones esta le inquirió a la Procuradora si disponía de alguna fecha alterna para que la quejosa pudiera comparecer.[7] Al contestar en la negativa, la Comisionada se reiteró en su determinación de declararla como testigo no disponible. De esta manera, la prueba de la Oficina del Procurador General consistió en el expediente del TPI del caso KAC 1996-1264, el Acta de

_____

[5] Informe de la Comisionada Especial rendido el 12 de marzo de 2012.

[6] Según surge de la orden emitida el 31 de enero de 2012 por la Comisionada Especial, la Procuradora acompañó la moción con un certificado médico. No obstante, la Comisionada apuntó que no se podía leer la firma del médico ni aparecía su número de licencia para poder identificarlo. Aludió la Comisionada Especial que ese documento aparentaba ser una hoja de receta.

[7] Véase, Informe de la Comisionada Especial, págs. 8-9.

Conocimiento Judicial que emitió la Comisionada en cuanto a ese expediente[8], el expediente de la querella y las comparecencias por escrito del querellado. Por su parte, el licenciado García Ortiz no presentó prueba testifical.

Luego de evaluar y aquilatar la prueba vertida, el 12 de marzo de 2012 la Comisionada nos rindió su informe. Concluyó que los cargos presentados contra el letrado no se sostenían y recomendó el archivo definitivo de esta querella. Así también, intimó que la incertidumbre de mantener en *status quo* este caso, por falta de disponibilidad de la querellante para declarar, no representaba un adecuado manejo para una justa, rápida y económica administración de la justicia.

En consideración a estos antecedentes fácticos y con el beneficio de la comparecencia de la Oficina del Procurador General, procedemos a enunciar los fundamentos que disponen de la presente querella disciplinaria.

II

Es sabido que la práctica de la profesión jurídica acarrea una delicada y seria función social, pues representa servicio, ética y ejemplo. Ramos Acevedo v. Tribunal Superior, 133 D.P.R. 599 (1993). Por ello, el desempeño de todo letrado se rige por los Cánones de Ética

---

[8] Cabe señalar que con relación al expediente del TPI la Comisionada había notificado un acta de conocimiento judicial la cual fue aceptada por las partes. Véase la Moción Informativa y en Cumplimiento presentada por la Procuradora General el 14 de abril de 2011 y la Moción presentada por el querellado el 1ro de abril de 2011. En esa acta la Comisionada detalló minuciosamente todos los eventos procesales de ese caso haciendo referencia a las intervenciones que tuvo el querellado.

Profesional que tienen el objetivo de promover los más altos principios de conducta decorosa para el beneficio de la profesión, de la ciudadanía y de las instituciones de justicia del país. *In re* Hernández Pérez I, 169 D.P.R. 91, (2006); *In re* Izquierdo Stella, 154 D.P.R. 732 (2001). Procederemos a exponer el derecho aplicable a las faltas éticas que se le imputaron al querellado.

A. **Puntualidad y tramitación de las causas**

El Canon 12 del Código de Ética Profesional, supra, le impone a todos los miembros de la profesión jurídica el deber ineludible de tramitar las causas de forma responsable, con la más excelsa puntualidad y diligencia. *In re* Nieves Nieves, 181 D.P.R. 25 (2011); *In re* Vélez Báez, 176 D.P.R. 201 (2009); *In re* Rosado Nieves, 159 D.P.R. 746 (2003). Este prescribe que:

> Es deber del abogado hacia el tribunal, sus compañeros, las partes y testigos el ser puntual en su asistencia y conciso y exacto en el trámite y presentación de las causas. Ello implica el desplegar todas las diligencias necesarias para asegurar que no se causen indebidas dilaciones en su tramitación y solución. Sólo debe solicitar la suspensión de vista cuando existan razones poderosas y sea indispensable para la protección de los derechos sustanciales de su cliente.

Conforme a esto un abogado no puede ausentarse de una vista y provocar con ello su suspensión, sin permiso del funcionario que la preside. *In re* Arroyo Villamil, 113 D.P.R. 568 (1982). Por lo tanto, la ausencia injustificada y voluntaria de un abogado a las vistas ya señaladas por el tribunal constituye una violación al referido canon. *In*

*re* Ríos Pérez, 179 D.P.R. 630 (2010); *In re* Rosado Nieves, supra.

Sin embargo, los Cánones de Ética Profesional no son, ni deben convertirse, en armas procesales adicionales para adelantar los intereses individuales de una de las partes en un caso. Lluch v. España Service Sta, 117 D.P.R. 729 (1986). La falta de diligencia que da lugar a sanciones éticas tiene que ser una crasa que denote falta de competencia o un menosprecio al sistema de administración judicial. Íd. Normalmente, las dilaciones o incidentes procesales en un caso deben atenderse y resolverse por los tribunales de instancia. Íd.

Por otro lado, el Canon 12, supra, requiere que los abogados presten atención minuciosa, diligencia y cumplimiento de las órdenes del tribunal, en particular cuando se trata de procedimientos relativos a la conducta profesional. *In re* Ruiz Hernández, 177 D.P.R. 963 (2010); *In re* Cuevas Velázquez, 174 D.P.R. 433 (2008); *In re* Ron Menéndez, 149 D.P.R. 105 (1999). En cumplimiento de este deber, los abogados están obligados a responder con premura y diligencia a los requerimientos relacionados con quejas por conducta profesional y, de no hacerlo, enfrentan sanciones disciplinarias serias. *In re* Martínez Class, 2012 T.S.P.R. 92, 184 D.P.R. ___ (2012); *In re* Rosario Martínez, 2012 T.S.P.R. 26, 184 D.P.R. ___ (2012); *In re* Pagán Pagán, 2012 T.S.P.R. 13, 183 D.P.R. ____ (2012). **La referida obligación es independiente a los**

**méritos de la queja presentada.** *In re* Martínez Miranda, 160 D.P.R. 263 (2008).

Recordemos que el incumplimiento con los requerimientos de la Oficina del Procurador General es igual de reprochable y acarrea las mismas sanciones que desatender las órdenes de este Tribunal. *In re* Lasalle Pérez, 153 D.P.R. 368 (2001). Así por ejemplo, hemos sostenido que constituye una falta de respeto hacia los procedimientos del tribunal la indebida, irrazonable e inexcusable tardanza de un abogado en formular su contestación a una querella. *In re* Vargas Soto, 146 D.P.R. 55 (1998).

B. **Competencia del abogado y consejo al cliente**

De otra parte, el Canon 18 del Código de Ética Profesional, <u>supra</u>, establece, en lo pertinente, que:

> Será impropio de un abogado asumir una representación profesional cuando está consciente de que no puede rendir una labor idónea competente y que no puede prepararse adecuadamente sin que ello apareje gastos o demoras irrazonables a su cliente o a la administración de la justicia.
>
> Es deber del abogado defender los intereses del cliente diligentemente, desplegando en cada caso su más profundo saber y habilidad y actuando en aquella forma que la profesión jurídica en general estima adecuada y responsable […].

Sabemos que todo miembro de la comunidad togada tiene la obligación de defender diligentemente los intereses de su cliente, por tanto, su gestión profesional debe llevarse a cabo aplicando en cada caso sus

conocimientos y habilidades. *In re* Fernández de Ruiz, 167 D.P.R. 661 (2006); *In re* Martínez Miranda, supra.

Para determinar el alcance de la violación impuesta en este Canon, es meritorio distinguir entre la diligencia requerida por el Canon 12 y el 18, supra. Según el Profesor Steidel, el deber de diligencia que impone el Canon 12, supra, se refiere al deber de actuar oportunamente a favor de un cliente o respecto a las órdenes del tribunal. Véase, S. Steidel Figueroa, Ética y Responsabilidad Disciplinaria del Abogado, 1ra ed., San Juan, Publicaciones J.T.S., 2010, pág. 188. Por su parte, el deber de diligencia que requiere el Canon 18, supra, se dirige al deber de competencia, es decir, poseer los conocimientos jurídicos necesarios para llevar a cabo la gestión profesional. S. Steidel Figueroa, op.cit., pág. 188.

Por ello, todo abogado cuyo desempeño profesional no sea uno adecuado, responsable, capaz y efectivo, incurrirá en una clara violación al Canon 18, supra. *In re* Castro Colón, 177 D.P.R. 333 (2010). Reiteradamente hemos señalado que los abogados deben asegurarse de que sus actuaciones dentro de cualquier caso en que intervengan estén encaminadas a lograr que las controversias se resuelvan de una manera justa, rápida y económica, por lo que este deber de diligencia profesional del abogado es incompatible con la desidia, despreocupación y displicencia. *In re* Rosa Rosa, 183 D.P.R. 759 (2011); *In re*

Padilla Pérez, 135 D.P.R. 770 (1994). En otras palabras, el deber de diligencia constituye una obligación básica y elemental del abogado respecto de su cliente. *In re* Dávila Toro, 179 D.P.R. 833 (2010).

C. **Información al cliente**

Por otra parte, el Canon 19, supra, rige el deber de mantener informado al cliente. En su texto se dispone:

> El abogado debe mantener a su cliente siempre informado de todo asunto importante que surja en el desarrollo del caso que le ha sido encomendado. Siempre que la controversia sea susceptible de un arreglo o transacción razonable debe aconsejar al cliente el evitar o terminar el litigio, y es deber del abogado notificar a su cliente de cualquier oferta de transacción hecha por la otra parte. El abogado que representa varios clientes con intereses comunes o relacionados entre sí no debe transigir ninguno de los casos envueltos sin que cada cliente esté enterado de dicha transacción y sus posibles consecuencias.

Como vemos, el abogado debe mantener informado a su cliente de todo asunto importante que surja en el desarrollo del caso que le ha sido encomendado. *In re* Cuevas Borrero, 2012 T.S.P.R. 79, 185 D.P.R. ___ (2012); *In re* Muñoz Morell, 182 D.P.R. 738 (2011); *In re* Cuevas Velázquez, supra. Sin embargo, esta obligación no se extiende a toda gestión que realice, sino solo a las gestiones importantes que no estén enmarcadas dentro del ámbito de discreción del abogado. *In re* Rivera Ramos, 178 D.P.R. 651 (2010). El factor esencial para determinar qué asuntos constituyen una gestión importante está vinculado con el grado de control que debe tener el cliente sobre su caso, es decir, la información que debe suministrar un

abogado a su cliente es aquella que este debe tener por su condición de dueño del caso. El Profesor Steidel expone que el deber de informar se extiende a toda información o asuntos que: (1) afecten o prolonguen la continuidad de un pleito; (2) de ser conocidos por un cliente, pudiera razonablemente llevarlo a finalizar el pleito; (3) aumente los costos del litigio; (4) impliquen una renuncia de derechos o de garantías procesales; o (5) tienen el potencial de exponerlo a consecuencias adversas ante terceros que no forman parte del pleito. S. Steidel Figueroa, op.cit., pág. 193.

Las decisiones adversas o favorables que finalicen parcial o totalmente un caso, se ubican en la primera categoría. Por ello, una sentencia es un asunto que debe informarse inmediatamente al cliente. *In re* Cardona Ubiñas, 146 D.P.R. 598 (1998). La referida violación es independiente al deber de diligencia impuesto por el Canon 18, supra. *In re* Rivera Lozada, 176 D.P.R. 215 (2009).

A pesar de que estos pronunciamientos constituyen una guía sobre la información que todo abogado está obligado a revelar a su cliente, las circunstancias particulares de cada caso delimitarán el tipo de información que será importante comunicar. Así pues, conviene puntualizar que dicho deber es del abogado para con el cliente, mas no del cliente para con el abogado. *In re* Castro Colón, supra; *In re* Muñoz Morell, supra.

D. **Renuncia de representación legal**

Por su parte, en lo pertinente, el Canon 20, supra, consigna que:

> […] al ser efectiva la renuncia del abogado debe hacerle entrega del expediente a su cliente y de todo documento relacionado con el caso y rembolsar inmediatamente cualquier cantidad adelantada que le haya sido pagada en honorarios por servicios que no se han prestado.

En armonía con lo anterior, cuando un abogado renuncia a la representación legal de un cliente está obligado a entregarle su expediente y todos los documentos relacionados con el caso. El expediente, al igual que la causa de acción, le pertenece exclusivamente al cliente. *In re* Santos Rivera, 172 D.P.R. 703 (2008). Por tanto, no debe haber dilación alguna en su entrega una vez el abogado concluye las gestiones para las cuales fue contratado o cuando el cliente solicita dicha entrega. *In re* Rivera Ramos, supra; *In re* Ríos Ríos, 175 D.P.R. 57 (2008).

E. **Rol del Comisionado Especial**

La Regla 14 del Reglamento del Tribunal Supremo, 4 L.P.R.A. Ap. XXI-A, R.14, establece que le corresponde a un Comisionado Especial, designado por el Tribunal, celebrar una vista para recibir la prueba. Asimismo, le corresponde evaluar y dirimir la evidencia conflictiva. *In re* Irizarry Castro, 172 D.P.R. 193 (2007). Aunque el Tribunal Supremo no está obligado a aceptar el informe del Comisionado Especial, de ordinario sostiene las determinaciones de hechos realizadas por dicho

funcionario, excepto cuando se demuestre prejuicio, parcialidad o error manifiesto. *In re* Torres Viñals, 180 D.P.R. 236 (2010). Esta doctrina de deferencia a las determinaciones del Comisionado Especial aplica cuando están basadas en prueba testifical. *In re* Cuevas Borrero, supra. Como sabemos, tal funcionario está en una posición similar al juzgador de instancia y puede aquilatar mejor la prueba. Íd. Sin embargo, cuando esas determinaciones estén basadas en la prueba documental que obra en el expediente, el tribunal revisor está en igual posición que el Comisionado Especial y por ende puede adoptar, modificar o rechazar tal informe. *In re* Torres Viñals, supra.

En ocasiones anteriores hemos determinado que la carga probatoria requerida en los procedimientos disciplinarios contra abogados es más acuciosa que el *quantum* de prueba requerido en los procedimientos civiles ordinarios, ya que en estos procesos está en juego el título de un abogado y, por ende, su derecho fundamental a ganarse su sustento. *In re* Martínez Almodóvar, 180 D.P.R. 805 (2011). Por ello, el estándar requerido es el de prueba clara, robusta y convincente, que es más alto y sólido que el de la preponderancia de la prueba, pero menos exigente y riguroso que el de prueba más allá de duda razonable. Íd.

Por último, hemos afirmado que al determinar la sanción disciplinaria aplicable a un abogado, es necesario

considerar su reputación en la comunidad, el historial previo de sanciones disciplinarias, la aceptación de la falta y su sincero arrepentimiento, si se trata de una conducta aislada, el ánimo de lucro que medió en su actuación, resarcimiento al cliente y cualesquiera otras circunstancias atenuantes o agravantes que medien de acuerdo a los hechos. *In re* Cuevas Borrero, supra; *In re* Vélez Barlucea, 152 D.P.R. 298 (2000).

III

Debemos ahora determinar si el querellado incurrió en las violaciones que le fueron imputadas. Previo a pasar juicio sobre esos asuntos conviene pronunciarnos en cuanto al señalamiento del Procurador General que sostiene que el haber declarado a la quejosa como testigo no disponible afectó su derecho a ser oída.

Sobre este particular, cabe reseñar que en varias ocasiones la Comisionada celebró vistas procesales con el propósito de coordinar fechas para la vista en sus méritos y la quejosa pudiera comparecer a testificar. Precisamente, en respuesta a las fechas sugeridas por la Procuradora, fue desde octubre de 2011 que se señaló la vista para febrero del siguiente año. Como se puede apreciar, la fecha para la vista se pautó con suficiente antelación. A pesar de ello, se le informó a la Comisionada que la testigo no estaría disponible para testificar a penas una semana y media antes de la vista en su fondo. Otro incidente relevante resulta ser que si

bien la Comisionada declaró no ha lugar la moción de suspensión presentada por la Procuradora, un examen del Informe demuestra que se exploró la posibilidad de pautar otra fecha posterior en que la querellante estuviera hábil para comparecer. Ello tampoco fue posible en ese momento, pues no se pudo señalar otra fecha. Ante ese tracto procesal, colegimos que la Comisionada no incurrió en abuso de discreción en el ejercicio de sus funciones.

Luego de ponderar los referidos incidentes, procede examinar las imputaciones éticas presentadas contra el querellado. En la querella se alegó que el letrado violó el Canon 12, _supra_, al demostrar una falta de comparecencia durante los procedimientos del caso en el foro de primera instancia.

En atención a las circunstancias específicas de este cargo, convenimos con la Comisionada Especial en que el hecho de que el querellado no compareciera a una vista en el foro de primera instancia el 24 de abril de 2001 constituyó un incidente procesal intranscendente que debió ser atendido por ese foro judicial. En esa ocasión, tal incomparecencia no puso en riesgo la acción de la clienta ni causó dilaciones ulteriores. Cabe puntualizar que esa fue la única vista a la que el querellado no asistió durante el trámite de ese pleito.

Ahora bien, corresponde analizar si la conducta desplegada por el licenciado García Ortiz está en contravención al Código de Ética Profesional al no atender

con diligencia las órdenes que se emitieron en el proceso disciplinario.

Se desprende del legajo que el 24 de junio de 2007 este Tribunal le refirió la queja a la Oficina del Procurador General y el 6 de julio de ese mismo año el licenciado García Ortiz presentó su contestación. Sin embargo, la Procuradora alegó que su contestación fue parca y poco responsiva. En vista de ello, el 21 de agosto de 2007 dictamos una orden para solicitarle información adicional y otra documentación. Un análisis del expediente refleja que el letrado no hizo entrega de los documentos. Ante ese incumplimiento, mediante Resolución de 27 de diciembre de 2007, le ordenamos nuevamente que en un plazo de 15 días suministrara los documentos que se le habían requerido y fue apercibido que de incumplir sería objeto de sanciones disciplinarias. Aun así, transcurridos siete meses, el licenciado García Ortiz tampoco compareció ante nos. Finalmente, se presentó la querella el 22 de mayo de 2009 y no fue hasta el 20 de mayo de 2010, es decir, un año después, que el licenciado García Ortiz presentó su contestación y sostuvo que había entregado los documentos que le fueron solicitados. Para ello presentó una copia de lo que alega ser la evidencia de que envió los mismos vía facsímil. Sin embargo, el referido documento de envío no acredita de forma fehaciente su contención. A pesar de ello, lo cierto es que desde agosto de 2007 se le había requerido que hiciera

tal entrega y no cumplió con ello, demostrando un patrón de desidia a las órdenes de esta Curia.

Una vez más reiteramos que los abogados deben la más estricta observancia a las órdenes judiciales, más aun cuando se trata de procedimientos disciplinarios, de otro modo, pueden quedar sujetos al rigor de sanciones éticas. *In re* Nieves Nieves, supra. Así también, constituye una falta de respeto hacia los procedimientos del Tribunal la indebida, irrazonable e inexcusable tardanza de un abogado en formular su contestación a una querella. *In re* Vargas Soto, 146 D.P.R. 55 (1998); *In re* Pérez Rodríguez, 115 D.P.R. 810 (1984); *In re* Díaz García, 104 D.P.R. 171 (1975). Es evidente que el querellado mediante su conducta incumplió con las órdenes de este Tribunal y en formular la contestación a la querella, sin acreditar justa causa para tal proceder.

Por su parte, el Canon 9 de Ética Profesional dispone que todo abogado deberá observar para con los tribunales una conducta que se caracterice por el mayor respeto y diligencia. En varias ocasiones se ha acudido a las disposiciones del mencionado Canon para atender situaciones en las cuales los abogados hacen caso omiso a las órdenes de este Tribunal durante un proceso disciplinario. *Véase* In re Rosario Martínez, 184 D.P.R. 494, 498 (2012). Al interpretar el Canon 9, supra, este Foro ha señalado que la naturaleza de la función de abogado requiere de una escrupulosa atención y obediencia

a las órdenes de este Tribunal o de cualquier foro al que se encuentre obligado a comparecer, incluyendo la Oficina del Procurador General, y más aún, cuando se trata de conducta profesional. In re García Baliñas, 167 D.P.R. 125 (2006). Es por ello que de forma reiterada hemos puntualizado el deber ineludible que tiene todo abogado admitido a la profesión de contestar los requerimientos del Procurador General. In re Irizarry Maldonado, 172 D.P.R. 306 (2007).

Por lo tanto, todo abogado tiene la obligación de responder prontamente a los requerimientos que le son cursados, independientemente de los méritos de la queja presentada en su contra. In re Rodríguez Bigas, 172 D.P.R. 345 (2007). Ello, puesto que el desatender las comunicaciones relacionadas a procedimientos disciplinarios tiene el mismo efecto disruptivo de la función reguladora sobre la profesión, que cuando se desatiende una orden emitida directamente por el Tribunal. Íd.; In re Ríos Acosta, 143 D.P.R. 128, 135 (1997). En consecuencia, colegimos que el letrado infringió en los Cánones 9 y 12, supra.

En referencia a la infracción al Canon 18, supra, consta en el expediente un acta de conocimiento judicial que resume los incidentes procesales del caso en el foro de primera instancia y refleja el desempeño del querellado durante el trámite judicial. Veamos.

El 1 de diciembre de 2000 el querellado presentó una Moción oponiéndose al pago de la liquidación de los bienes gananciales hasta que se dilucidara la procedencia ganancial de unos honorarios que el esposo de la quejosa había recibido mientras estaban casados. Tiempo después, presentó otra moción informativa sobre la venta de un inmueble ganancial. Para fines de la división de los bienes gananciales, se nombró un Contador Partidor con quien se reunió en varias ocasiones. Una vez presentado el Informe del Contador, el letrado solicitó tiempo para su estudio. Tiempo después, el 10 de mayo de 2005, presentó una moción informando que aún estaban pendientes para reunirse con el contador ya que ese informe no se expresó en cuanto a los honorarios a cobrar por el demandante. Finalmente, se aprobó el Informe del Contador Partidor y el 20 de octubre de 2005 el foro primario emitió sentencia. Posteriormente, el 16 de noviembre el querellado presentó oportunamente una moción de reconsideración arguyendo que no se habían atendido los señalamientos hechos al contador respecto al informe.[9]

---

[9] La Regla 47 de Procedimiento Civil, 32 L.P.R.A. AP. III R. 41, dispone en lo pertinente que: "[…] la parte adversamente afectada por una sentencia del Tribunal de Primera Instancia podrá, dentro del término jurisdiccional de quince (15) días desde la fecha del archivo en autos de copia de la notificación de la sentencia, presentar una moción de reconsideración de la sentencia." La Procuradora General aduce que la moción de reconsideración se presentó fuera de término. No le asiste la razón. El Tribunal emitió Sentencia el 20 de octubre de 2005 y fue notificada y archivada en autos el 2 de noviembre de 2005. En virtud de ello, el querellado sometió la moción de reconsideración el 16 de noviembre de 2005. A tenor con las Reglas de Procedimiento Civil, tenía hasta el 17 de noviembre de 2005 para someter la referida moción. Por lo cual, fue presentada oportunamente.

De los hechos esbozados se desprende que el desempeño del licenciado García Ortiz fue uno adecuado a fin de proteger los intereses de la quejosa en la liquidación de los bienes gananciales. Este compareció a las vistas señaladas y se mantuvo al tanto de las alegadas incongruencias que reflejaba el Informe del Contador Partidor. En esa gestión el letrado se reunió en varias ocasiones con el contador a fin de conciliar unas diferencias que existían en cuanto a la cuota que le correspondería a su clienta. Todo ello fue posteriormente ponderado y adjudicado por el TPI. Por consiguiente, concluimos que el licenciado García Ortiz no se apartó del citado precepto.

Por otro lado, también se aduce que el querellado infringió el Canon 19, supra, al no notificar inmediatamente a la quejosa la sentencia dictada en su contra y no mantener comunicación con ella durante la etapa de ejecución de la sentencia. La Procuradora sostiene que no fue hasta el 11 de enero de 2006 que la quejosa advino en conocimiento de la referida sentencia, al visitar el tribunal para obtener una copia certificada de la misma. Esta alegación surge de una expresión que hiciera el propio querellado en una moción que presentó durante este procedimiento[10] manifestando que "[s]e hicieron gestiones adicionales en el tribunal con referencia a la sentencia emitida y la propia Sra. Lucy

---

[10] Véase Moción en Cumplimiento de Orden del 20 de octubre de 2008.

López Martínez el día 11 de enero de 2006 obtuvo copia certificada y me la hizo llegar a la oficina".

Ahora bien, para probar este cargo y garantizar el debido proceso de ley del querellado era necesario el testimonio de la señora López. Como vimos, en sus comparecencias el querellado alegó que mantuvo a la quejosa al tanto de todo lo que ocurría en el caso. Sin embargo, en cuanto a ese particular, la credibilidad de la quejosa no pudo ser apreciada por la Comisionada y en el expediente no obra prueba alguna dirigida a sostener este cargo. Como sabemos, es doctrina reiterada que las meras alegaciones no constituyen prueba. En vista de ello, ante la ausencia de prueba para sustentar que el querellado faltó al deber de notificarle a su clienta la sentencia y mantenerla al tanto de los procedimientos, es forzoso concluir que el querellado no faltó al deber ético que le exige el Canon 19, _supra_.

Nos resta por resolver si el licenciado García Ortiz quebrantó el Canon 20, _supra_. En su contestación a la queja el querellado sostuvo que no tenía reparo en entregar el expediente del caso a la quejosa y que el asunto le fue delegado a otra persona. Empero, al contestar la querella afirmó que había hecho entrega del expediente una vez finalizó el caso, pero que no tomó recibo de la entrega por la relación de confianza que existía con su clienta. Aun cuando le ordenamos mediante Resolución de 27 de diciembre de 2007 que acreditara la

entrega del mismo, el querellado hizo caso omiso. Somos del criterio que el hecho de no responder a los requerimientos de este Tribunal y las inconsistencias en sus contestaciones, son hechos que, si bien no constituyen prueba en cuanto a la alegación que se incorporó en la queja, denotan una conducta censurable para un miembro de esta profesión. El querellado nunca ofreció respuestas precisas en cuanto a lo sucedido con el expediente de la quejosa. Una vez más, de su conducta se deriva una reiterada dejadez y falta de atención a los requerimientos de la Oficina del Procurador General. Esas actuaciones son contrarias a los requisitos que encarna el Canon 12, supra.

IV

Por los fundamentos que anteceden concluimos que el Lcdo. José A. García Ortiz infringió los Cánones 9 y 12 del Código de Ética Profesional, supra, al provocar dilaciones sin justa causa en el proceso disciplinario. Su conducta durante este procedimiento, ignorando las órdenes emitidas por este Tribunal, constituye una afrenta a las normas éticas que rigen la profesión jurídica en Puerto Rico. Como mencionamos en *In re* Asencio Márquez, 183 D.P.R. 659, 664 (2011),

> [e]ste tribunal no flaqueará en suspender a los togados que demuestren un reiterado incumplimiento con los términos finales y perentorios impuestos para cumplir con nuestras órdenes. El hecho de que esta Curia esté en disposición de conceder prórrogas para lograr el cumplimiento con nuestras órdenes, en aras de corregir deficiencias al ejercicio de la

profesión legal, no impide nuestra función disciplinaria. Tampoco exonera al letrado de las consecuencias de las violaciones éticas en que incurra ante nuestro Foro.

Atendido lo anterior, consideramos como agravante el hecho de que el querellado fue suspendido de la profesión en ocasiones anteriores. Véase In re García Ortiz, 176 D.P.R. 123 (1993); In re García Ortiz, 133 D.P.R 666 (2009). En consecuencia, lo suspendemos inmediatamente del ejercicio de la abogacía y la notaría por el término de seis meses.

El querellado notificará a sus clientes que por motivo de la suspensión no puede continuar con su representación legal, y devolverá a éstos los expedientes de los casos pendientes y los honorarios recibidos por trabajos no realizados. Asimismo, informará de su suspensión a cualquier Sala del Tribunal General de Justicia o a cualquier foro administrativo donde tenga algún caso pendiente.

Por último, tiene la obligación de acreditar y certificar ante este Tribunal, en el término de treinta días, que cumplió con lo antes señalado. El cumplimiento con estos deberes será notificado también al Procurador General. El Alguacil de este Tribunal incautará inmediatamente la obra y sello notarial del abogado para trámites ulteriores.

Se dictará Sentencia de conformidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

In re: José A. García Ortiz

CP-2009-0007

SENTENCIA

San Juan, Puerto Rico, a 11 de diciembre de 2012.

Por los fundamentos expuestos en la Opinión Per Curiam que antecede, la cual se hace formar parte de la presente Sentencia, concluimos que el Lcdo. José A. García Ortíz infringió los Cánones 9 y 12 del Código de Ética Profesional. En consecuencia, lo suspendemos inmediatamente del ejercicio de la abogacía y la notaría por el término de seis meses.

El querellado notificará a sus clientes que por motivo de la suspensión no puede continuar con su representación legal, y devolverá a éstos los expedientes de los casos pendientes y los honorarios recibidos por trabajos no realizados.

Asimismo, informará de su suspensión a cualquier Sala del Tribunal General de Justicia o a cualquier foro administrativo donde tenga algún caso pendiente.

Por último, tiene la obligación de acreditar y certificar ante este Tribunal, en el término de treinta días, que cumplió con lo antes señalado. El cumplimiento con estos deberes será notificado también al Procurador General. El Alguacil de este Tribunal se incautará inmediatamente de la obra y sello notarial del abogado para trámites ulteriores.

Así lo pronunció y manda el Tribunal. Lo certifica la Secretaría del Tribunal Supremo. La Jueza Asociada señora Fiol Matta y la Juez Asociada señora Rodríguez Rodríguez, no intervinieron.


Aida I. Oquendo Graulau
Secretaria del Tribunal Supremo